**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

FORT WISEMAN                                                                                    PLAINTIFF

V.                                                                          CAUSE NO. 3:13-CV-00184-SA-JMV

NEW BREED LOGISTICS, INC.                                                                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Fort Wiseman brings this action alleging retaliatory termination under the Family Medical Leave Act ("FMLA") and race discrimination under 42 U.S.C. § 1981. Defendant New Breed Logistics, Inc. ("New Breed") has filed a Motion for Summary Judgment [56], arguing both claims should be dismissed, or that alternately, Wiseman's potential recovery on those claims should be limited under the after-acquired evidence doctrine. After considering the motion, responses, rules, and authorities, the Court finds as follows.

*A. Facts and Procedural History*

I. Wiseman's Time at New Breed

Wiseman, who is black, began working for New Breed in July 2008 as a material handler in its Olive Branch facility. He eventually became a "yard driver" after two promotions with two accompanying pay raises. As a yard driver, Wiseman operated a small tractor called a "yard mule" to move full or empty trailers to and from a shipping dock for loading and unloading.

In April 2012, Wiseman was granted paid time off ("PTO") for a heart procedure. Both his immediate supervisor Sandra Bell and her supervisor George Nielson were aware of Wiseman's surgery and absence. The procedure took place on April 2, 2012, and Wiseman returned to work the following week on April 9, 2012.

The incident giving rise to Wiseman's claims occurred before sunrise on April 13, 2012. Wiseman was moving a trailer to the shipping dock when its door swung open and crashed into the dock's receiving door, causing damage to the trailer in the amount of three hundred and fifty-one dollars. New Breed asserts that Wiseman made two errors in causing this accident. First, New Breed contends that Wiseman should have secured the trailer door with a latch rather than with a string. Wiseman insists, however, and at least two other witnesses agree, that the trailer had no latch. Second, Wiseman proceeded toward the dock by backing in at an angle, but New Breed contends he should have backed directly toward the dock by squaring the trailer in front of the receiving door.

Following this accident, New Breed suspended Wiseman and conducted an internal review. The facility's general manager, Doug Rabe, recommended Wiseman for termination. New Breed's human resources director, vice president of operations, and general counsel then reviewed and approved Rabe's recommendation. Wiseman received termination notice by telephone and by mail in early May 2012.

II. The Present Litigation

In July 2013, after receiving his right-to-sue letter, Wiseman initiated suit in this Court, alleging that New Breed violated the FMLA and 42 U.S.C. § 1981. New Breed filed the pending Motion for Summary Judgment [56], which his now ripe for the Court's review.

*B. Summary Judgment Standard*

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). Notably, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are an inadequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*C. Discussion and Analysis*

I. FMLA Retaliation Claim

Two distinctive sets of provisions are found in the FMLA. Nero v. Ind. Molding Corp., 167 F.3d 921, 927 (5th Cir. 1999) (citing Bocalbos v. Nat'l W. Life Ins. Co., 162 F.3d 379, 383 (5th Cir. 1998)). The first set "creates a series of entitlements or substantive rights." Id. For example, the FMLA entitles an eligible employee who suffers a disabling health problem to twelve weeks of unpaid leave within one year from the time the problem occurs. 29 U.S.C. § 2612(a)(1); Ragsdale v. Wolverine Worldwide, Inc., 535 U.S. 81, 86, 122 S. Ct. 1155, 152 L. Ed.

2d 167 (2002); Rutland v. Pepper, 404 F.3d 921, 923 (5th Cir. 2005). And normally, after returning from such leave, the employee must be reinstated to the same or an equivalent position. 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214(a); Rutland, 404 F.3d at 923.

The second set "is proscriptive . . . ." Nero, 167 F.3d at 927. Under the proscriptive provisions, employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act. 29 U.S.C. § 2615(a)(1). Nor may they "discharge or in any other manner discriminate against any individual" for exercising their FMLA-protected rights. Id. § 2615(a)(2). Wiseman's retaliation claim falls under the latter, proscriptive provisions. Mauder v. Metro. Transit Auth. of Harris Cnty., Tex., 446 F.3d 574, 580 (5th Cir. 2006).

Like many employment-discrimination claims, FMLA retaliation is governed by the McDonnell Douglas burden-shifting framework absent direct evidence of discrimination. Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005). Thus, to prevail, Wiseman must first meet his prima facie burden by showing that "(1) [he] engaged in a protected activity, (2) the employer discharged h[im], and (3) there is a causal link between the protected activity and the discharge." Id. New Breed contests the first and third elements only.

As to the first, New Breed argues that Wiseman was not protected by the FMLA since he requested PTO and was in fact paid during the week he was absent for his heart procedure. This presents an issue that has generated conflict among federal courts—whether an employee taking PTO loses the FMLA's protections. Compare Price v. City of Fort Wayne, 117 F.3d 1022, 1026 (7th Cir. 1997) (finding employer on notice that FMLA applied when employee requested PTO only), with Ney v. City of Hoisington, Kan., 264 F. App'x 678, 682 (10th Cir. 2008) (holding that employee who rejected FMLA leave and asked for PTO was not covered under the Act), and

4

Gonzales v. City of Albuquerque, 849 F. Supp. 2d 1123, 1178 (D.N.M. 2011) aff'd, 701 F.3d 1267 (10th Cir. 2012) (finding employee who provided dates for her PTO but not for her FMLA leave could not establish her prima facie case). Resolving this conflict here is unnecessary, especially without Fifth Circuit guidance on the issue, as Wiseman faces a more significant hurdle to establishing his prima facie case, i.e., causation.

To demonstrate causation, Wiseman must either show (a) that he "was treated less favorably than an employee who had not requested leave under the FMLA;" or (b) that "the adverse decision was made because [he] took FMLA leave." Hunt v. Rapides Healthcare Sys., 277 F.3d 757, 768 (5th Cir. 2001) (citing Chaffin v. John H. Carter Co., Inc., 179 F.3d 316, 319 (5th Cir. 1999)). Wiseman pursues the second avenue, arguing that his suspension and subsequent termination, which New Breed instituted only four days after he returned to work, satisfy the causation prong.

Timing alone may establish causation if the protected activity and the adverse employment are "very close." Washburn v. Harvey, 504 F.3d 505, 511 (5th Cir. 2007) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)). In fact, this Court has twice found causation established at summary judgment based on such suspicious timing. Newcomb v. Corinth Sch. Dist., 2014 WL 1746066, at *5 (N.D. Miss. May 1, 2014) (termination less than two months after injury and one day after surgery); Linzy v. Sara Lee Corp., 2012 WL 1190907, at *5 (N.D. Miss. Apr. 10, 2012) (termination seven days after injury reported).

Still, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." Brungart v. BellSouth Telecomms.,

5

Inc., 231 F.3d 791, 799 (11th Cir. 2000); see also Coleman v. FFE Transp. Servs., Inc., 2013 WL 1914932, at *6 (N.D. Tex. May 9, 2013) ("[K]nowledge of the FMLA leave by the decision maker is [usually] required to establish a causal connection . . . ."). Here, there is no evidence that the individuals who played a role in Wiseman's termination—New Breed's human resources director, general manager, senior vice president of operations, and general counsel—knew about Wiseman's leave or his medical condition at the time he was suspended and subsequently terminated.

Wiseman does not dispute this but argues instead that Sandra Bell, his direct supervisor, and George Nielson, the facility's inventory supervisor, did have the requisite knowledge as evidenced from their deposition testimonies. Though neither were involved in the suspension or termination decision, their knowledge may be "imputed" to New Breed under Judge Posner's "cat's paw" theory if Bell or Nielson (a) "exhibited retaliatory animus" and (b) "possessed leverage, or exerted influence, over the titular decisionmaker." Roberson v. Alltel Info. Servs., 373 F.3d 647, 653 (5th Cir. 2004) (quoting Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir. 2000)); see also Coleman, 2013 WL 1914932, at *6 (applying "cat's paw" theory to FMLA case). Animus is defined as "ill will, antagonism, or hostility, usu[ally] controlled but deep-seated and sometimes virulent." Roque v. Natchitoches Parhish Sch. Bd., --- F. App'x ---, 2014 WL 5659387, at *1 (5th Cir. Nov. 5 2014) (quotation omitted) (alteration in original). Thus to establish retaliatory animus, Wiseman must show something more than mere knowledge of his FMLA protected leave. Id.; see also Coleman, 2013 WL 1914932, at *6. Nothing in the record suggests, nor does Wiseman argue, that Bell or Nielson harbored such hostility toward Wiseman simply for taking FMLA qualifying leave. In fact, Nielson was responsible for Wiseman's previous promotions. See c.f. Brown v. CSC Logic, Inc., 82 F.3d 651, 658 (5th Cir. 1996)

6

("Claims that employer animus exists in termination but not in hiring seem irrational."). The Court likewise finds no evidence that either possessed leverage or exerted influence over the decision-makers with regard to Wiseman's suspension or termination. For these reasons, Bell's and Nielson's knowledge cannot be imputed to New Breed.

Without showing the decision-makers, when making the decision to terminate Wiseman, had any actual or constructive knowledge that he took paid leave for his heart surgery, he cannot establish causation and cannot meet his prima facie burden. Consequently, his FMLA retaliation claim is dismissed.

II. Section 1981 Race-Discrimination Claim

Wiseman's next claim is for race discrimination under 42 U.S.C. § 1981, which is "governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." Miller v. Kimes & Stone Const. Co., Inc., 2014 WL 4803094, at *2 (N.D. Miss. Sept. 24, 2014) (quoting Harrington v. Harris, 118 F.3d 359, 367 (5th Cir. 1997)). Having presented no direct evidence that New Breed discriminated against him, Wiseman relies on the McDonnell Douglass burden shifting formula. See Harrington, 118 F.3d at 367-68 (applying McDonnell Douglass framework to a claim under Section 1981).

*(a) Prima Facie Case*

Wiseman's initial burden under this framework is to establish his prima facie case by presenting evidence that he (1) belongs to a protected class, (2) suffered an adverse employment action, (3) was qualified for his position, and (4) either received less favorable treatment than similarly situated employees outside the protected class or was replaced by a person outside the protected class. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). New Breed contests only the fourth element under this framework.

As an alternate to satisfying the elements, Wiseman can meet his prima facie burden by showing that he did not violate a rule for which he was terminated. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir. 1980)). The Court will therefore address in turn whether Wiseman received less favorable treatment than similarly situated non-black employees, whether he was replaced by a non-black employee, and whether he was terminated for a rule he did not break.

### (1) Less Favorable Treatment

Wiseman first attempts to meet the fourth prima facie element by arguing that he received less favorable treatment than Scott Jamison, a white employee. Wiseman points out that Jamison also damaged a trailer door but was not fired until he caused a second accident one month later. For this to be relevant, however, Wiseman must first demonstrate that he and Jamison were similarly situated. Lee v. Kan. City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009).

Similarly situated means "the employment actions at issue were taken 'under nearly identical circumstances'" and that "the plaintiff's conduct that drew the adverse employment decision [was] 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment actions." Id. at 259-60 (citations omitted). Importantly, however, "nearly identical" is not the same as "identical." Id. at 260. If "the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories[,]" the employment actions taken are considered nearly identical. Id. (citation omitted). But "if the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment from the employer,' the employees are not similarly

situated . . . ." Id. at 260 (quoting Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001)) (emphasis in original).

New Breed identifies key differences between Wiseman and Jamison. Wiseman had four years' experience with New Breed and was a permanent employee. Jamison, however, was never more than a probationary employee and had worked at New Breed for just two months at the time he allegedly received preferential treatment. See Cameron v. Ohio, 344 F. App'x 115, 119 (6th Cir. 2009) (An employer may be "less willing to forgive an employee's [miscues] given extensive experience, than to forgive a similar deficiency in an employee just learning the ropes.").

In addition, it is undisputed that prior to their respective trailer accidents, Jamison had yet to receive any disciplinary counseling, but Wiseman had been subject to disciplinary action for three different incidents.[1] Wiseman received written warnings for striking a pole with a forklift and later for operating a forklift without the required paperwork. Wiseman also received a final written warning and disciplinary counseling for failing to properly seal (lock) trailers parked in the facility yard. Thus, when New Breed made its decisions regarding Wiseman and Jamison, it was not faced with essentially comparable violation histories.

For these reasons, New Breed's decision to terminate Wiseman and its decision to retain Jamison were not made under "nearly identical" circumstances, and the two employees were not similarly situated. Thus, Wiseman cannot establish his prima facie case by this method.

---

[1] Wiseman testified that Jamison's trailer accident was actually his second offense. Wiseman did not personally witness either accident, but learned about them from unidentified persons Wiseman knew from the "break room." This break-room chatter, when used to prove Jamison was involved in a prior accident, is inadmissible hearsay, FED. R. EVID. 801(c), 802, and therefore not competent summary-judgment evidence. FED. R. CIV. P. 56(c)(2).

### (2) Replacement from Outside the Class

Wiseman additionally attempts to meet his prima facie burden by showing that he was replaced by someone outside his protected class. It is undisputed that, after Wiseman was terminated, New Breed contracted with Supply Chain Solutions ("Supply Chain"), a company that provided temporary workers to help fill the void Wiseman left behind. Two black people and a white person performed Wiseman's tasks for a few months on a rotating basis. Ultimately, however, New Breed hired a white permanent employee to fill Wiseman's former job. The Court must determine whether the relevant replacements are the temporary ones or the permanent one.

This Court was recently presented with the same issue, although with reversed ramifications. Schuh v. Town of Plantersville, Miss., 2014 WL 4199271, at *5 (N.D. Miss. Aug. 22, 2014). There, a white plaintiff was initially replaced with a black employee, but the employer eventually hired a white employee to perform her duties. Id. The Court found the plaintiff's prima facie burden was not satisfied because she and the "permanent replacement" shared the same race. Id. at *6-7 (citing Mercer v. Capitol Mgmt. & Realty, 242 F. App'x 162, 163 (5th Cir. 2007) (affirming summary judgment because plaintiff could not rebut the employer's assertion that her replacement was only temporary and thus failed to satisfy the fourth prong of the analysis). If applied here, this reasoning would support Wiseman's prima facie case because, unlike the Schuh plaintiff, Wiseman belongs to a different race than does his permanent replacement.

New Breed counters by citing a decision from the Western District of Texas where, as here, the plaintiff's immediate and temporary successor belonged to his race, but the ultimate permanent replacement did not. Moini v. Univ. of Tex. at Austin, 832 F. Supp. 2d 710, 726 (W.D. Tex. 2011). Id. There, the court noted that employers could not "'game the system' and

categorically avoid Title VII liability simply by firing a person and temporarily replacing him or her with a token member of the same protected class." Id. Nevertheless, the court determined there was no evidence that such a "ruse to disguise Defendant's intentional discrimination" existed and found that the plaintiff could not establish the fourth prong of his prima facie case. Id. Thus, while the relevant replacement in Schuh was permanent, 2014 WL 4199271, at *7, the relevant replacement in Moini was temporary. 832 F. Supp. 2d at 726. The Moini court, however, cited no authority for its holding, id., whereas this Court in Schuh based its reasoning on Fifth Circuit precedent. 2014 WL 4199271, at *6-7 (citing Mercer, 242 F. App'x at 163). The Court will therefore adhere to its previous logic.

Moini is also factually distinguishable. The plaintiff's successor in that case was apparently the defendant's employee, id., whereas Wiseman's initial successor was an independent contractor who supplied the workers.[2] The first actual employee New Breed hired to perform Wiseman's duties was both permanent and white. Therefore, consistent with its reasoning in Schuh, the Court finds that Wiseman was ultimately replaced by one outside his protected class and has established his prima facie case on this basis.

### (3) Work-Rule Doctrine

The final method Wiseman pursues to meet his prima facie burden is the "work-rule" doctrine. In a "work-rule violation case, a Title VII plaintiff may establish a prima facie case by showing . . . 'that he did not violate the rule . . . .'" Mayberry, 55 F.3d at 1090 (quoting Green, 612 F.2d at 968 (5th Cir. 1980)).

According to New Breed, Wiseman was terminated for, among other reasons, his "failure to secure trailer door causing property damage." Wiseman used a string to tie back the trailer

---

[2] It is unclear whether a corporate independent contractor is considered a "replacement." Compare Mitchell v. Worldwide Underwriters Ins. Co., 967 F.2d 565, 566 (11th Cir. 1992), with Williams v. 55th Street Theatre Foundation, Inc., 1994 WL 501760, at *5 (S.D.N.Y. Sept. 13, 1994).

door before approaching the dock, a method that Wiseman insists was necessary because the trailer was not equipped with a latch. Wiseman testified that Nielson, the inventory manager was fully aware that New Breed employees routinely employed this procedure when confronted with a trailer that had no latch. In addition, Blake Johnson, a former maintenance worker, claimed he previously notified Nielson that many trailers were missing latches. According to Johnson, Nielson said "he would look into it," but never did. Further, after Wiseman's accident, Neilson took several photographs purporting to show the trailer in question was in fact equipped with a latch. There is, however, substantial competing evidence, including testimony and different photographs, showing the trailer had no latch. Johnson testified that as many as sixty percent of the containers at New Breed were likewise inadequately equipped. Additionally, Paul Harris, the employee who investigated the incident at issue concluded that Wiseman was "following procedure."

Based on this evidence, a jury could reasonably believe that Wiseman did not violate the rule for which he was fired. Thus, Wiseman has also satisfied his prima facie case under the work-rule doctrine.

*(b) Legitimate, Non-Discriminatory Reasons*

As Wiseman has made a prima facie showing, the burden "shifts to the employer to articulate a legitimate, nondiscriminatory . . . reason for its employment action." McCoy, 492 F.3d at 558. For a reason to be legitimate, "the defendant is not required to 'persuade the court that it was actually motivated by the proffered reasons,'" but must "clearly set forth, through the introduction of admissible evidence, the reasons for [its decision]." Turner, 675 F.3d at 900 (quoting Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).

Throughout the termination process, New Breed put forth multiple different reasons for terminating Wiseman, all relating to the trailer-door accident. According to several documents in the termination file, Wiseman was fired for failing to secure the trailer door and causing property damage. Additionally, multiple people who reviewed the file claimed to have considered Wiseman's three prior disciplinary incidents. Further, Doug Rabe, the facility general manager, testified that he recommended termination for three reasons: a Safety-A Rule violation,[3] "failure to follow procedures after being retrained to those procedures, and severity of the incident." These proffered reasons satisfy New Breed's obligation and shift the burden back to Wiseman, who must prove that the explanations were merely pretextual, Turner, 675 F.3d at 892, or that if New Breed's reasons were true, another "motivating factor" in its decision was Wiseman's race. Rachid v. Jack in the Box, 376 F.3d 305, 312 (5th Cir. 2004).

*(c) Pretext*

Wiseman may establish pretext "by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton v. Gap Inc., 333 F.3d 572, 578 (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). If he succeeds, the "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive." Id. (citation omitted). This is because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation . . . ." Id. (quoting Reeves, 530 U.S. at 147-48, 120 S. Ct. 2097). Demonstrating pretext is alone sufficient unless "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision," or

---

[3] New Breed's Rules of Safety Conduct include Safety-A Rules, which when violated "generally result in a final warning or termination," as well as Safety-B Rules, which are cause for "a minimum of a first written warning up to and including immediate termination . . . ."

13

"the plaintiff create[s] only a weak issue of fact" and there is otherwise "abundant and uncontroverted evidence that no discrimination occurred." Id. (citing Russell, 235 F.3d at 223).

Wiseman argues that New Breed's bases for firing him were unfounded. For instance, as discussed *supra*, Wiseman's evidence shows the trailer he damaged was not equipped with a latch and that the inventory supervisor knew this was a possibility. Also, there is evidence that earlier disciplinary counseling Wiseman received was unwarranted. That is, Wiseman was punished for failing to place seals (locks) on trailer doors, but more than one person testified that no seals were available. Finally, whether Wiseman actually violated a Saftey-A Rule as Rabe asserted presents a factual question, as there is no listed Safety-A that specifically addresses Wiseman's conduct, nor did Rabe specify which rule was broken. The Court agrees that the facts supporting New Breed's decision are certainly in dispute. Yet "[s]imply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007). In other words, Wiseman must demonstrate more than an incorrect employment decision. Id.

To so demonstrate, Wiseman argues that New Breed's asserted reasons are not only factually disputed, but also inconsistent. A "jury may infer that the employer's proffered reasons are pretextual" if it "offers inconsistent explanations for its employment decision at different times . . . ." Staten v. New Palace Casino, LLC, 187 F. App'x 350, 359 (5th Cir. 2006) (citing Gee v. Principi, 289 F.3d 342, 347-48 (5th Cir. 2002)). Wiseman argues the inconsistency lies in the general manager Rabe's actions. Rabe signed a change-of-status form stating that Wiseman was terminated for "failure to secure trailer door causing property damage." Yet, at Rabe's deposition, he gave an additional reason that appears nowhere else in the evidence, asserting that

Wiseman should have backed the trailer toward the dock instead of at an angle.[4] This purported inconsistency creates no technical conflict, as it is possible to both improperly secure the trailer door and to inappropriately back the trailer in at an angle. See Hamilton v. Waters Landing Apartment, --- F. App'x ---, 2014 WL 6602445, at *5 (5th Cir. Nov. 21, 2014) (finding no pretext when proffered reasons were different, but not inconsistent"). Yet it does present a different, but closely related problem.

Although Rabe's multiple explanations are not necessarily contradictory, his deposition nonetheless expanded the list of reasons evinced in New Breed's pre-litigation documentation. Importantly, the "timing of an employer's changing rationale is also probative of pretext." Staten, 187 F. App'x at 359 (citing Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1311 (10th Cir. 2005)). Justifications for termination provided after litigation has commenced may be sufficient to constitute pretext. See Burkett v. Miss. Dep't of Mental Health, 2010 WL 55936, at *3 (S.D. Miss. Jan. 4, 2010) (holding that defendant's proffered reason that first appeared in its reply brief constituted pretext); See also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000) ("Another method of establishing pretext is to show that [the defendant's] nondiscriminatory reasons were after-the-fact justifications, provided subsequent to the beginning of legal action."); see also Pastran v. K-Mart Corp., 210 F.3d 1201, 1206 (10th Cir. 2000) (finding that statements prepared in anticipation of litigation evinced retaliatory motive and thus pretext). Here, although Rabe testified that he originally recommended termination for all three reasons that appear in his deposition transcript, his testimony is undercut by the change-of-status form he signed, which includes (at best) only reasons one and three—

---

[4] This is consistent with the roster from Wiseman's disciplinary counseling session in February 2012, which states as coverage topic: "[s]quare trailer up in front of dock door, open trailer doors."

"failure to secure trailer door" and "property damage."[5] These shifting explanations become even more suspicious since, as discussed *supra*, there is evidence contradicting the facts underlying New Breed's well-documented reasons, but there is no factual dispute over the new proffered explanation—that Wiseman violated procedure by approaching the dock at an angle.

In light of the various factual discrepancies and shifting explanations, the Court finds that Wiseman has produced enough evidence from which a reasonable jury could believe that New Breed's proffered reasons were false and that New Breed is "dissembling to cover up a discriminatory purpose." Reeves, 530 U.S. at 147, 120 S. Ct. 2097. For that reason, summary judgment on Wiseman's race discrimination claim is DENIED.[6]

### III. After-Acquired Evidence

New Breed argues that, even if Wiseman's race-discrimination claim is allowed to proceed, his available recovery should be limited based on a misrepresentation he made in his New Breed employment application. If "an employer learns about employee wrongdoing that would lead to legitimate discharge . . . even if it is acquired during the course of discovery in a suit against the employer[,]" the trial court should limit a back-pay award "from the date of the unlawful discharge to the date the new information was discovered." McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 362, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995). Such a finding would also preclude reinstatement or front pay. Id. For an award to be limited in this way, the employer "must first establish that the wrongdoing was of such severity that the employee in fact

---

[5] Rabe's deposition possibly included another previously undocumented reason for termination—the "A-Rule violation." It is unclear to what conduct Rabe referred when mentioning this rule violation. For the Court to find, as New Breed argues, that he was referring to Wiseman's "failure to secure trailer door," would require an assumption not supported by the evidence.

[6] In holding that Wiseman avoids summary judgment on his race-discrimination claim by producing sufficient pretext evidence, the Court finds it unnecessary to address whether Wiseman has also presented sufficient evidence to support a mixed-motive theory. See Staten, 187 F. App'x 350 at 359-60 (Having reversed summary judgment by finding pretext, "we need not address [the plaintiff's] alternative arguments under Rachid and the mixed-motive framework).

would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." Shattuck v. Kinetic Concepts, Inc., 49 F.3d 1106, 1108 (5th Cir. 1995) (quoting McKennon, 513 U.S. at 362, 115 S. Ct. 879); see also Weeks v. Coury, 951 F. Supp. 1264, 1274 (S.D. Tex. 1996) (limiting available remedy to the time period before the employer discovered plaintiff's job-application misrepresentation).

In his deposition, Wiseman admits that, contrary to his representation on the employment application, one former employer did not "lay him off," but fired him for a driving-under-the-influence charge that was later dropped.[7] By the terms in the application Wiseman signed, "any false information or any misrepresentation or any omission of facts or failure to fully answer any question is cause for immediate dismissal from the company . . . ." Thus, Wiseman's misstatement would have provided New Breed legitimate grounds to terminate him if he was still its employee.

Wiseman argues that whether New Breed would have actually fired him is a jury question. He cites two supporting cases that both involved disputed facts. Smith v. Berry Co., 165 F.3d 390, 395 (5th Cir. 1999) (holding that a reasonable jury could have found the defendant failed to meet his burden under the after-acquired evidence doctrine "[i]n light of the factual disputes over travel and the fact that the antirecording policy focused on phone calls with clients"); Silverberg v. Boyd Tunica, Inc., No. 2:09-CV-00119-WAP-DA, at *1 (N.D. Miss. 2011) (Order Granting in Part and Denying in Part Summary Judgment [71]) (finding that whether "the defendant would have had grounds" under the employee handbook to "fire the plaintiff for making the surreptitious audio recordings" was a "question of fact for the jury"). Here though, the New Breed human resources director stated, by sworn declaration that had

---

[7] Wiseman now argues in his memorandum that "in a sense he was laid off" and that termination is a form of being laid off. This is unavailing, however, because Wiseman's own deposition shows he fully perceived a distinction. When asked "You weren't laid off . . . you were fired, right?", Wiseman responded "Yes, sir."

17

Wiseman been "employed with New Breed at the time of his deposition, he would have been terminated for making this false representation on his employment application." This declaration is undisputed, and thus the Court finds Wiseman has presented no factual issue.[8] Hence, should Wiseman succeed at trial on his race-discrimination claim, the Court finds front pay and reinstatement are not available, and back pay is only available from the date Wiseman was terminated until May 8, 2014, the date the misrepresentation was unearthed at his deposition.

*D. Conclusion*

No decision-maker had knowledge that Wiseman had taken time off for a heart procedure, making his FMLA claim insufficient as a matter of law. And while the evidence does support Wiseman's race-discrimination claim, his available recovery is limited under the after-acquired evidence doctrine. Accordingly, New Breed's Motion for Summary Judgment [56] is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this 18th day of December, 2014.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**

---

[8] Wiseman takes issue with the human resource director's "self-serving affidavit." Importantly though, she is not an interested witness. Wiley v. Am. Elec. Power Serv. Corp., 287 F. App'x 335, 339 (5th Cir. 2008) (quoting Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 898 (5th Cir. 2002)) (finding that employer's decision-maker was not, based purely on his position, an "interested" witness). Therefore, her unrebutted statement must be accepted. Reeves, 530 U.S. at 151, 120 S. Ct. 2097 ("[T]he court should give credence to . . . that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.") (internal quotation omitted).